# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:19-cv-01335-RGK-AGR | Date | April 30, 2019 |
|---|---|---|---|
| Title | *Ayala v. Kaiser* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Plaintiff's Motion to Remand (DE 21) & Defendants' Motion to Dismiss (DE 31)**

## I. INTRODUCTION

On January 11, 2019, Frank Ayala ("Plaintiff") filed a First Amended Complaint ("FAC") against his former employer and three individual managers thereof: Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, Southern California Permanente Medical Group, Marie McCauley, Brenda Miller, and Salvador Verduzco (collectively, "Kaiser" or "the Kaiser Defendants"); and against his former union and one individual representative thereof: Steelworkers Union 7600 and Sonia Bracey (collectively, "the Union" or "the Union Defendants"). Plaintiff alleges ten state law claims in the FAC, including: (1) hostile work environment; (2) failure to prevent discrimination or harassment; (3) retaliation; (4) discrimination and harassment; (5) wrongful termination in violation of public policy; (6) defamation; (7) breach of fiduciary duty; (8) breach of duty of fair representation; (9) intentional infliction of emotional distress; and (10) negligent infliction of emotional distress. Claims one, six, nine, and ten are alleged as to all defendants; claims two, three, four, and five are alleged as to the Kaiser Defendants; and claims seven and eight are alleged as to the Union Defendants.

On February 22, 2019, the Union Defendants removed the action to this Court on the grounds that federal question jurisdiction exists because claims seven and eight are preempted by § 301 of the Labor Relations Management Act ("LMRA"), 29 U.S.C. § 185 ("Section 301"). Subsequently, on February 27, 2019, Plaintiff dismissed the Union Defendants. On March 22, 2019, Plaintiff filed a Motion to Remand. On April 9, 2019, Kaiser filed a Motion to Dismiss claims six, nine, and ten.

Plaintiff's Motion to Remand and Kaiser's Motion to Dismiss are presently before the Court. For the following reasons, the Court **GRANTS** Plaintiff's Motion to Remand and **DENIES as moot** Kaiser's Motion to Dismiss.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:19-cv-01335-RGK-AGR | Date | April 30, 2019 |
|---|---|---|---|
| Title | *Ayala v. Kaiser* | | |

## II. FACTUAL BACKGROUND

Plaintiff alleges the following in the FAC:

From 2005 to 2017, Plaintiff was employed by Kaiser as a Unit Secretary and was a member of the Union. As part of his employment, Plaintiff was subject to a collective bargaining agreement ("CBA") between Kaiser and the Union. In addition, Plaintiff agreed to abide by Kaiser's "Principles of Responsibility," an agreement governing employees' conduct.[1]

In 2015, Plaintiff transferred to a different unit and began working under a new supervisor, Defendant Brenda Miller, and alongside a new co-worker, Defendant Marie McCauley. Soon after Plaintiff transferred, McCauley began to harass and bully Plaintiff by touching him inappropriately. In October 2016, Plaintiff complained about McCauley's harassment to Miller, but Miller did nothing to stop McCauley's behavior. Plaintiff then filed a grievance with the Union complaining about both McCauley's harassment and Miller's refusal to stop it.

After Plaintiff filed the grievance, Miller and McCauley began a campaign of retaliation against Plaintiff. From October 2016 to October 2017, Miller issued fabricated negative performance reviews and unfounded disciplinary actions against Plaintiff. Meanwhile, McCauley's harassment of Plaintiff continued. Plaintiff filed a complaint with Kaiser's Compliance Department, alleging that Miller and McCauley had violated Kaiser's "Principles of Responsibility."[2] Although Kaiser assigned Plaintiff an investigator to look into his complaint further, Kaiser failed to stop McCauley's ongoing abuse or Miller's retaliatory acts. Plaintiff became distressed and took a medical leave for stress in August 2017.

Shortly after Plaintiff returned from stress leave, Miller filed another unfounded action against Plaintiff, this time because Plaintiff purportedly violated the Health Insurance Portability and Accountability Act ("HIPAA"). Accordingly, a meeting was convened between Miller, Defendant Salvador Verduzco (a Kaiser employee), Plaintiff, and Plaintiff's union representative, former defendant Sonia Bracey. During a break, Plaintiff confessed to Bracey that the situation had caused Plaintiff so much stress, he had previously fantasized about shooting Miller and McCauley. However, Plaintiff told Bracey that he no longer had those thoughts following his leave of absence.

Despite assuring Plaintiff that his confession was confidential, Bracey immediately reported to Verduzco that Plaintiff was thinking of shooting Miller and McCauley in the head. The next day, Kaiser placed Plaintiff under an investigatory suspension. Additionally, Kaiser posted Plaintiff's picture at many places on the Kaiser campus along with a warning to "be on the lookout" for Plaintiff and to

---

[1] The Court was not provided with a copy of Kaiser's "Principles of Responsibility."

[2] The FAC quotes the "Principles of Responsibility" in relevant part: "Kaiser Permanente (KP) does not tolerate retaliation against individuals who, in good faith, report illegal, unethical, or otherwise inappropriate acts of retaliation against individuals who refuse to participate in wrongdoing." (Notice of Removal, Ex. G ¶ 29, ECF No. 1-7.)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-01335-RGK-AGR | Date | April 30, 2019 |
|---|---|---|---|
| Title | *Ayala v. Kaiser* | | |

report him if seen. Further, Kaiser reported to the police that Plaintiff had made "terrorist threats," and Plaintiff was arrested two days later on this charge. While Plaintiff was in jail, Kaiser sought an injunction preventing Plaintiff from returning to the Kaiser campus. After four days in jail, Plaintiff was released and no charges were filed.

### III. JUDICIAL STANDARD

"Upon removal, the district court must determine whether it has subject matter jurisdiction and, if not, it must remand [to state court]." *Dahl v. Rosenfeld*, 316 F.3d 1074, 1076 (9th Cir. 2003); 28 U.S.C. § 1447(c). The party seeking removal bears the burden of establishing federal jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. *See* 28 U.S.C. § 1441(a)–(b); *see also* 28 U.S.C. §§ 1331, 1332(a). A case presents a "federal question" if a claim "aris[es] under the Constitution, laws, or treaties of the United States." *Sullivan v. First Affiliated Secs., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (quoting 28 U.S.C. § 1331).

Only state court actions that could originally have been filed in federal court may be removed. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Whether removal jurisdiction exists must therefore be determined by reference to the "well-pleaded complaint." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986). The well-pleaded complaint rule makes plaintiff the "master of the claim." *Caterpillar*, 482 U.S. at 392. Thus, where a plaintiff can state claims under both federal and state law, he can prevent removal by ignoring the federal claims and alleging only state law claims. *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996).

There is an exception to the "well-pleaded complaint" rule, however. *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 950 (C.D. Cal. 2014). Under the "artful pleading" doctrine, a plaintiff cannot defeat removal of a federal claim by disguising or pleading it artfully as a state law cause of action. *Id.* If the claim arises under federal law, the federal court will recharacterize it and uphold removal. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981). The "artful pleading" doctrine applies to state claims that are completely preempted by federal law, such as claims arising under § 301 of the LMRA. *Caterpillar*, 482 U.S. at 393.

### IV. DISCUSSION

The Court may remand this case to state court only if it finds (1) lack of subject matter jurisdiction, or (2) defects in the removal procedure. *See* 28 U.S.C. § 1447(c). According to Plaintiff, the Court does not have subject matter jurisdiction because the Union Defendants have been dismissed from the case. Plaintiff avers that, while his claims for breach of contract against the Union may have been

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:19-cv-01335-RGK-AGR | Date | April 30, 2019 |
|---|---|---|---|
| Title | *Ayala v. Kaiser* | | |

preempted by § 301, those claims are now extinguished and the remaining tort claims arise under state law only.

Kaiser disagrees, and argues that Plaintiff's IIED, NIED, and defamation claims are preempted under § 301, conferring federal question jurisdiction. *See Caterpillar*, 482 U.S. at 393. In the alternative, Kaiser contends that remand is inappropriate because the Court has original diversity jurisdiction. *See* 28 U.S.C. § 1332. The Court addresses each argument in turn.

    A.    **<u>Section 301 LMRA Preemption</u>**

Section 301(a) of the LMRA gives federal courts exclusive jurisdiction to hear a suit for violation of a collective bargaining agreement. 29 U.S.C. § 185(a). "The preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983) (quoting 29 U.S.C. § 185(a)).

Despite the broad preemptive effect of § 301, a claim that seeks to vindicate "nonnegotiable state-law rights . . . independent of any right established by contract" is not within its scope. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). Suits based on torts, rather than on breach of union contract, are thus preempted by § 301 only if their evaluation is "substantially dependent upon" or "inextricably intertwined with consideration of the terms of [a] labor contract." *Id.* at 220, 213.

By contrast, a state law right is independent from the CBA if it "can be enforced without any need to rely on the particular terms, explicit or implied, contained in the labor agreement." *Miller v. AT & T Network Sys.*, 850 F.2d 543, 546 (9th Cir. 1988). In deciding whether a state law is preempted under § 301, a court must therefore consider "whether the CBA contains provisions that govern the actions giving rise to a state claim." *Id.* at 548. If a CBA is silent on the conduct at issue, the Court need not resort to the CBA to interpret the claim. *See Tellez v. Pac. Gas & Elec. Co.*, 817 F.2d 536, 539 (9th Cir. 1987).

The "plaintiff's claim is the touchstone" in determining whether a claim requires interpretation of a CBA. *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001). "[T]he need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Id.* Accordingly, a defendant cannot invoke preemption merely by alleging a "hypothetical connection between the claim and the terms of the CBA" or a "creative linkage" between the subject matter of the suit and the wording of the CBA. *Id.* at 691–92. For preemption to apply, "the proffered interpretation argument must reach a reasonable level of credibility." *Id.* at 692. A preemption argument is not credible "simply because the court may have to consult the CBA to evaluate [a plaintiff's claim]." *Id.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:19-cv-01335-RGK-AGR | Date | April 30, 2019 |
|---|---|---|---|
| Title | *Ayala v. Kaiser* | | |

It is undisputed that Plaintiff's employment with Kaiser was governed in part by the CBA. In order to establish federal question jurisdiction, Kaiser has the burden of showing that the resolution of at least one of Plaintiff's state law claims substantially depends on provisions of the CBA. *See Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 997 (9th Cir. 2007); *see also Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009) ("The burden of establishing federal subject matter jurisdiction falls on the party invoking removal."). For the reasons below, the Court does not find that Plaintiff's claims are preempted.

1. *Emotional Distress*

In the FAC, Plaintiff alleges claims for both intentional and negligent infliction of emotional distress (respectively, "IIED" and "NIED"). In support of his IIED claim, Plaintiff alleges that Miller, his supervisor, intentionally caused him emotional distress by issuing unfounded negative performance reviews and disciplinary actions. In support of his NIED claim, Plaintiff alleges that Miller and Kaiser breached duties owed to Plaintiff, causing him emotional distress.

Under California law, Plaintiff will prevail on his IIED claim only if he proves that he suffered severe emotional distress due to Miller's actions, and that Miller's behavior was "so extreme and outrageous 'as to go beyond all possible bounds of decency.'" *See Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 499 n.5 (1970). To prevail on his NIED claim, Plaintiff must show the essential elements of a negligence tort claim: duty, breach, causation, and damages. *See Moon v. Guardian Postacute Servs., Inc.*, 95 Cal. App. 4th 1005, 1009 (2002).

Kaiser argues that Plaintiff's emotional distress claims are preempted because they substantially depend upon the CBA. First, Kaiser contends that resolving Plaintiff's claims requires analyzing the CBA to determine "the precise contours of any duty Kaiser might have owed Plaintiff." (Defs.' Opp'n to Pl.'s Mot. to Remand 7, ECF No. 28.) Second, Kaiser points to the CBA's grievance procedures and argues that, when a CBA specifies the proper procedures for disciplining employees, determining whether an employer acted reasonably or outrageously will depend on how far he or she strayed from those procedures. *See, e.g., Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1350 (9th Cir. 1985).

The Court is not persuaded by Kaiser's first argument. Kaiser cites to no CBA sections that set forth standards for the administration of discipline.[3] The only provision that comes close is the management clause, which states that the Employer has the exclusive right to "suspend or discharge for just cause." (Defs.' Req. for Judicial Notice, Ex. 1 at 4, ECF No 29-1.) However, Plaintiff does not allege emotional distress resulting from his suspension. Instead, Plaintiff's claim is based on Miller's

---

[3] Perhaps those disciplinary procedures are outlined in the Kaiser "Principles of Responsibility" or the "labor management partnership agreement" that Plaintiff and Kaiser both refer to in their papers, but the Court has not been provided these documents and, regardless, has no reason to believe the documents are contracts subject to § 301 preemption.

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-01335-RGK-AGR | Date | April 30, 2019 |
|---|---|---|---|
| Title | *Ayala v. Kaiser* | | |

unfounded negative performance reviews and disciplinary actions. The CBA does not attach a "just cause" standard to acts of discipline. (*Id.*)

Even if a "just cause" standard applied, Plaintiff alleges that the bases for Miller's disciplinary actions against him were entirely false. (Notice of Removal, Ex. G ¶¶ 30–35, ECF No. 1-7.) Determining whether the actions were based in truth or fabrications would not require the Court to interpret the CBA. *See Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000) ("[I]n the context of § 301 complete preemption, the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'"). Plaintiff's claim instead "depends on a purely factual inquiry into the conduct and motivation of the employer." *See Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083, 1088 (9th Cir. 1991). Accordingly, analyzing the CBA would be unnecessary to determine both whether Miller breached her duty by fabricating facts to support disciplinary action, or acted reasonably or outrageously in disciplining Plaintiff.

The Court is similarly unpersuaded by Kaiser's second argument that the CBA's grievances section mandates preemption. The grievances section outlines detailed procedures for "aggrieved employee[s]" to pursue their "justifiable request[s] or complaint[s]." (Defs.' Req. for Judicial Notice, Ex. 1 at 70.) These grievance procedures, however, do not appear to encompass the "five step 'progressive' discipline policy" and its escalating levels of mandated "corrective actions" that Plaintiff alleges in the FAC. (Notice of Removal, Ex. G ¶ 28.) Kaiser fails to point to any section of the CBA that governs the specific rights and obligations of managers in disciplining subordinates under such a policy.

Therefore, because "the present agreement is silent" on the conduct giving rise to Plaintiff's claims, "examination or interpretation of the agreement would not help to resolve [the] claim[s]." *See Tellez*, 817 F.2d at 539. Accordingly, the Court finds that Plaintiff's emotional distress claims are not preempted by § 301.

    2. *Defamation*

In the FAC, Plaintiff alleges that Miller and Kaiser defamed him by (1) publishing falsified performance reviews and disciplinary actions, and (2) distributing notices to Kaiser employees warning them to "be on the lookout" for Plaintiff. The Court also finds that these claims are not preempted.

The tort of defamation involves a publication that is false, defamatory, and unprivileged, and that has a natural tendency to injure or that causes special damage. *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). California's defamation law establishes "nonnegotiable rights and obligations independent of any labor contract." *Tellez*, 817 F.2d at 538. Still, § 301 will preempt state law defamation claims that are "inextricably intertwined" with a CBA. *See, e.g.*, *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1063 (9th Cir. 1989). However, Plaintiff's defamation claim will not be preempted if it "neither asserts

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-01335-RGK-AGR | Date | April 30, 2019 |
|---|---|---|---|
| Title | *Ayala v. Kaiser* | | |

rights deriving from the collective bargaining agreement, nor requires interpretation of the agreement's terms." *See Tellez*, 817 F.2d at 538.

Kaiser first argues that Plaintiff's defamation claim is preempted as it pertains to the disciplinary actions. In support of its position, Kaiser points to language in the CBA that states, "[e]mployees will be made aware of counseling notices, and other memorandum [sic] which pertain to disciplinary action(s)." (Defs.' Req. for Judicial Notice, Ex. 1 at 77.) Kaiser contends that, based on this provision, Plaintiff's disciplinary actions were "compelled by the CBA." (Defs.' Opp'n to Pl.'s Mot. to Remand 9:22.)

The Court is not convinced, as no interpretation of the CBA is required to resolve Plaintiff's claim that the falsified disciplinary actions defamed him. To resolve the claim, the trier of fact will need to consider the actual statements that were written in the disciplinary actions, whether they were false, whether they were published, and whether there was an applicable privilege defense. *See Busey v. P.W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1051 (N.D. Cal. 2005). By relying on the provision stated above, Kaiser seems to mistake its duty to make employees aware of disciplinary actions against them, with some requirement to make other employees aware of those notices. This is an overreach. Plaintiff's claim for defamation is therefore an "independent" state claim and is not preempted by § 301. *See Allis-Chalmers Corp.*, 471 U.S. at 213.

Kaiser next argues that the defamation claim is preempted as it pertains to Kaiser's distributing notices to employees to "be on the lookout" for Plaintiff. In support of its position, Kaiser points to two provisions. First, the CBA states that "[an] investigatory suspension will only take place when the Employer has reason to believe that the employee should be removed from the working environment in order to ensure employee, patient and visitor health, safety and well-being, or to protect the assets of the Organization." (Defs.' Req. for Judicial Notice, Ex. 1 at 76.) Second, the CBA states that Kaiser "shall make reasonable provisions for the safety and health of the employees during the hours of their employment, and [] review unsafe conditions brought to its attention for any corrective action which may be necessary." (Defs.' Req. for Judicial Notice, Ex. 1 at 100.) Based on these two provisions, Kaiser argues that it "acted under the terms of its CBA" by distributing Plaintiff's picture with the accompanying warning to "be on the lookout" for him. (Defs.' Opp'n to Pl.'s Mot. to Remand 11:11.)

Again, the Court is unpersuaded. Kaiser contends that "whether and to what extent [Bracey] used reasonable care to determine the truth or falsity of the information about Plaintiff that [ultimately led to Kaiser's posting "lookout" notices] will be 'substantially dependent' upon the scope and nature of her obligations to report credible threats of workplace violence to Kaiser under the CBA." (Defs.' Opp'n to Pl.'s Mot. to Remand 10:16–21.) First, however, the issue of whether Bracey used reasonable care to determine the truthfulness of the facts is not relevant to Plaintiff's defamation claim. The salient question is whether the information was, in fact, true or false. Second, Bracey was dismissed from the FAC and her duties under the CBA are not at issue. Finally, Kaiser does not cite any CBA terms providing for such reporting obligations—the CBA is silent on the conduct.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:19-cv-01335-RGK-AGR | Date | April 30, 2019 |
|---|---|---|---|
| Title | *Ayala v. Kaiser* | | |

At best, the two provisions on which Kaiser relies provide a justification or defense for its conduct. However, "reliance on CBA provisions to defend against an independent state law claim does not trigger § 301 preemption." *Humble v. Boeing Co.*, 305 F.3d 1004, 1011 (9th Cir. 2002). Accordingly, "reliance on the CBA as an aspect of a defense is not enough to 'inject[] a federal question into an action that asserts what is plainly a state-law claim.'" *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007). *See also Caterpillar*, 482 U.S. at 398–99 (explaining that "the plaintiff is the master of the complaint," and that if the defendant could engineer "the forum in which the claim shall be litigated" based on the substance of its defense, "the plaintiff would be master of nothing").

For the above reasons, the Court does not find Plaintiff's defamation claims are preempted by § 301.

### B. Diversity Jurisdiction

Finally, Kaiser contends that even if Plaintiff's claims are not preempted by § 301, the Court has original diversity jurisdiction over the case and thus should not remand.

According to the "forum defendant rule," local defendants cannot remove a case to federal court based on diversity jurisdiction. 28 U.S.C. § 1441(b)(2); see *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006) ("Removal based on diversity jurisdiction is intended to protect out-of-state defendants from possible prejudices in state court.").

It is undisputed that the Kaiser Defendants are citizens of California. Although the "forum defendant rule" is procedural, and thus a waivable defect, Plaintiff filed his Motion to Remand within the 30-day time limit mandated by 28 U.S.C. § 1447(c). *See Lively*, 456 F.3d at 939 (explaining that when a local defendant removes based on diversity, the defect is procedural, not jurisdictional). As such, the Court does not consider the defect waived. Therefore, the Court finds that removal based on diversity jurisdiction is improper.

### V. CONCLUSION

As stated above, the Court finds that Plaintiff's state law claims are not preempted by § 301. Therefore, the Court finds no federal question subject matter jurisdiction over this case. In addition, removal for diversity subject matter jurisdiction is procedurally defective pursuant to the "forum defendant rule." *See* 28 U.S.C. §§ 1441(b)(2), 1447(c).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-01335-RGK-AGR | Date | April 30, 2019 |
|---|---|---|---|
| Title | *Ayala v. Kaiser* | | |

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Remand. Accordingly, Kaiser's Motion to Dismiss is **DENIED as moot**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer